UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BAKUL DAVE', | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:18-cv-02122-GCS |
| | ) |
| THE BOARD OF TRUSTEES OF | ) |
| SOUTHERN ILLINOIS UNIVERSITY, | ) |
| CARBONDALE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

On November 9, 2021, the Court granted in part and denied in part Defendant Board of Trustees of Southern Illinois University Carbondale's motion for sanctions against Plaintiff Bakul Dave'. (Doc. 66). After an examination of Plaintiff's conduct prior to and during his deposition, the Court found that his "dilatory conduct when scheduling his deposition and his evasive, non-responsive, and aggressive demeanor during the deposition" were particularly egregious. *Id*. at p. 9. The Court therefore ordered that Defendant submit an accounting of its costs, expenses, and fees for its motion for sanctions, the deposition at issue in that motion, and the cancellation of Plaintiff's previous deposition on March 17, 2020. *Id*. at p. 10-11. Now before the Court is Defendant's accounting (Doc. 67) and Plaintiff's objections thereto (Doc. 69). For the

reasons delineated below, the Court **ACCEPTS in part and REDUCES in part** Defendant's accounting.

## FACTUAL BACKGROUND

The parties first began experiencing difficulties with discovery in July 2019. (Doc. 28). Defendant served written discovery to Plaintiff on July 19, 2019. (Doc. 32, p. 1). However, despite several attempts working with Plaintiff's counsel, Plaintiff failed to provide responses until July 14, 2020. *Id*; *see also* (Doc. 34). As a result, the parties completed no discovery for more than two years after the Court entered its initial scheduling order in the case. *See* (Doc. 22).

On October 4, 2019, Defendant filed a consent motion to continue the jury trial date and to extend the discovery schedule. (Doc. 26). In the motion, the parties represented that Plaintiff would respond to written discovery no later than October 25, 2019. *Id*. Defendant would respond to written discovery by November 15, 2019. *Id*. The Court accepted the parties' request, as they jointly indicated that additional time was needed to complete written discovery. (Doc. 27). Accordingly, the Court extended the discovery deadline to May 1, 2020. *Id*. Through Administrative Order No. 261, the Court again extended the deadline to June 30, 2020. (Doc. 32, p. 2).

On October 31, 2019, Defendant's counsel reached out to Plaintiff's counsel via email to discuss when Plaintiff's discovery responses would be received. (Doc. 32, p. 2). Defendant's counsel received no response, and thus Defendant's counsel reached out again on November 14, 2019. *Id*. Plaintiff's counsel responded that he was "putting

[responses] together" and apologized for the delay. *Id*. On December 16, 2019, Defendant's counsel followed up again by email after receiving no response. *Id*. Once more, Plaintiff's counsel did not respond. *Id*. Defendant reached out again on January 2, 2020. *Id*. This time, Plaintiff's counsel stated that he was going to meet with Plaintiff on January 7, 2020 and would have the responses completed by January 10, 2020. *Id*. However, no responses were provided. Defendant's counsel followed up on May 20, 2020, and when Plaintiff's counsel did not respond, Defendant filed a motion to dismiss for failure to prosecute on May 29, 2020. *Id*.

The Court noted that Plaintiff's counsel consistently indicated that discovery responses would come "in short order," though no responses were provided and no reasons were given for this failure. (Doc. 32, p. 4). Through this conduct, Plaintiff and his counsel demonstrated a consistent disregard for the Court's orders regarding discovery, which favored dismissal. *Id*. at p. 4-5. The Court, however, was not alerted to the discovery issues until May 2020; as such, the Court had not yet imposed a lesser sanction against Plaintiff. *Id*. at p. 5. The Court therefore denied the motion to dismiss, but directed Plaintiff to respond to the outstanding discovery requests within fourteen days. *Id*. Plaintiff complied with this order. (Doc. 34).

Defendant's counsel first reached out to Plaintiff's counsel about scheduling Plaintiff's deposition on January 7, 2021. (Doc. 48, Exh. 3, p. 6). On January 19, 2021, Defendant's counsel suggested taking the deposition on February 18th, 22nd, or the 23rd. *Id*. at p. 4. After hearing no response from Plaintiff's counsel, on January 29, 2021,

Defendant's counsel suggested March 4th, 11th, or the 16th-19th. *Id*. at p. 3. Plaintiff's counsel agreed to the March 11th date on February 11, 2021 (the "March 11th deposition"). *Id*. However, the parties were not able to complete the deposition because Plaintiff did not have the ability to video conference on his computer. (Doc. 48, Exh. 4, p. 8).

The parties rescheduled Plaintiff's deposition for March 17, 2021 (the "March 17th deposition"); however, Plaintiff did not appear at the deposition due to rain. (Doc. 48, Exh. 4, p. 8). The same day, Defendant's counsel emailed Plaintiff's counsel to request that Plaintiff's counsel pay for the court reporter's cancellation fee. *Id*. Defendant's counsel also provided five possible dates for Plaintiff's deposition in April 2021. *Id*. On March 18, 2021, Plaintiff's counsel agreed to pay the cancellation fee, but to date he has not yet done so. (Doc. 48, Exh. 4, p. 7). When responding to Defense counsel's attempts to reschedule the deposition on March 18th, Plaintiff's counsel indicated that he could not attend prior to April 12th; however, he did not select any of the five dates Defendant's counsel provided which were after April 12th. *Id*.

Defendant's counsel followed up with Plaintiff's counsel on April 12, 2021, requesting that Plaintiff's counsel list available dates for the deposition prior to May 10th. (Doc. 48, Exh. 4, p. 6). However, Plaintiff's counsel was not able to meet prior to May 10th due to a health concern. *Id*. at p. 5. Defendant's counsel again tried to schedule Plaintiff's deposition on June 1, 2021. *Id*. at p. 4. Eventually, the parties agreed to schedule Plaintiff's deposition for July 13, 2021 (the "July 13th deposition"). *Id*. at p. 2-3. Discovery was scheduled to be completed by July 15, 2021. (Doc. 42).

Plaintiff arrived on time for his July 13th deposition. (Doc. 48, p. 2). During the deposition, Defendant's counsel asked Plaintiff a series of questions regarding his attempts to seek employment after his termination from SIUC. (Doc. 43, p. 1). Though these questions were both relevant and routine, Plaintiff refused to answer the questions on the basis of the privilege against self-incrimination. (Doc. 48, p. 3). The parties took a brief break, during which Plaintiff's counsel explained that Plaintiff's responses were not privileged and that Plaintiff needed to answer the questions posed to him. (Doc. 43, p. 1).

When the parties returned to the deposition, Plaintiff again refused to answer the questions posed to him. (Doc. 43, p. 1). On the record, Defendant's counsel asked Plaintiff's counsel whether Plaintiff's counsel was making the objection or directing Plaintiff not to answer Defendant's counsel's questions. *Id.* at p. 1-2. Plaintiff's counsel responded that he was directing Plaintiff to respond to the questions. *Id.* at p. 2. Nevertheless, Plaintiff refused to answer the questions. *Id.* When Plaintiff did respond to questions, he would state that documents in the record were "false" or "forgeries", that he did not remember specifics about his assignments, and that Defense counsel's questions were "false and fraudulent." (Doc. 48, p. 5-6).

On July 13, 2021, Plaintiff's counsel filed a motion to withdraw as Plaintiff's attorney citing the aforementioned episode and other discovery disagreements. (Doc. 43). However, during a hearing on the motion to withdraw, Plaintiff's counsel and Plaintiff settled their differences regarding these disputes, and Plaintiff's counsel withdrew his motion. (Doc. 65). Plaintiff no longer disputes that his refusal to answer the questions

posed to him was inappropriate. (Doc. 62, p. 2). Although he believed that he was making a good-faith objection based on potential self-incrimination, Plaintiff no longer objects to his obligation to respond to questions regarding his post-termination job search. *Id.*

On July 19, 2021, Defendant filed a motion for sanctions over Plaintiff's dilatory conduct regarding the scheduling of depositions and the objections made during the July 13th deposition. (Doc. 47). The Court granted in part and denied in part this motion. (Doc. 66). In doing so, the Court required that Defendant "submit an accounting of its costs, expenses, and fees (including attorneys' fees) for the following: the instant motion for sanctions (Doc. 47), the deposition which gave rise to the instant motion, and the cancellation of the March 17th deposition." *Id*. at p. 10-11. Plaintiff is required to pay these fees within sixty days of the accounting. *Id*.

## ANALYSIS

In considering the amount of fees to award, the Court looks to *Goodyear Tire & Rubber Co. v. Haeger*, 137 S.Ct. 1178 (2017). In *Goodyear*, the Supreme Court considered a "federal court's authority to sanction a litigant for bad-faith conduct by ordering it to pay the other side's legal fees." *Id.* at 1183-84. The Court held "that such an order is limited to the fees that the innocent party incurred solely because of the misconduct – or put another way, to the fees that party would not have incurred but for the bad faith." *Id.* at 1184. Sanctions imposed for discovery violations "must be compensatory rather than punitive in nature." *Id.* at 1186 (citing *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 826-830 (1994)). Compensating a party for fees incurred due to misconduct is

permissible, but any sanction imposed beyond that becomes punitive and may require criminal-type procedural guarantees. *Id.* at 1186. Accordingly, courts fashioning fee awards must award only those fees with a "causal link" between a party's "misbehavior and legal fees paid by the opposing party" using a "but-for test." *Goodyear*, 137 S.Ct. at 1186-87. The but-for standard allows courts to "exercise discretion and judgment" in "assess[ing] and allocat[ing] specific litigation expenses," but the Supreme Court instructs that a "court's fundamental job is to determine whether a given legal fee – say, for taking a deposition or drafting a motion – would or would not have been incurred in the absence of the sanctioned conduct." *Id.* at 1187. In pursuit of an appropriate fee award, courts "may use estimates in calculating and allocating an attorney's time." *Id.* (quoting *Fox v. Vice*, 563 U.S. 826, 838 (2011)).

Defendant provides a verbatim accounting of the expenses and attorneys' fees counsel submitted to its client, the Southern Illinois University Carbondale ("SIUC"), in pursuit of Plaintiff's deposition and the motion for sanctions Defendant filed thereafter. (Doc. 67, Exh. 1). These charges include $1,454.91 in expenses related to Plaintiff's depositions, as well as $18,110.32 in attorneys' fees. *Id.* at p. 2-9. The fees include time spent corresponding with Plaintiff's counsel and amending the scheduling order to schedule Plaintiff's deposition, research and preparation for Plaintiff's deposition, the conducting of the deposition, and the preparation of Defendant's motion for sanctions. *Id.* As Plaintiff does not challenge the $1,454.91 in costs incurred for the March 17th and

July 13th depositions, the Court will focus its analysis on the attorneys' fees of Defendant's counsel. (Doc. 69, p. 2).

To calculate attorneys' fees, the district court generally begins with the "lodestar," *i.e.*, the product of the hours reasonably expended on the case multiplied by a reasonable hourly rate. *See Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed[ ]" in support of the lodestar. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). "Although lodestar yields a presumptively reasonable fee . . . the court may nevertheless adjust the fee based on factors not included in the computation[.]" *Montanez*, 755 F.3d at 553. Such factors can include the time and labor required, the novelty or difficulty of the case, the degree of success achieved, the experience and ability of the attorneys, the adequacy of the documentation of the hours, and whether appropriate billing judgment was used. *See Hensley*, 461 U.S. at 430, 430 n.4.

The hours worked component of the lodestar must exclude hours not reasonably expended, including "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434. In determining whether hours are reasonable, the Court must determine whether the task would normally be billed to a paying client and whether certain tasks could easily be delegated to non-professional assistants. *See Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 533 (7th Cir. 1999). The Court may also reduce the hours calculation "[w]here the documentation of hours is inadequate[.]" *Hensley*, 461 U.S. at 433. Duplicative time that cannot be billed reasonably to a client also cannot be billed to an

adversary through fee-shifting. *See Gibson v. City of Chicago*, 873 F.Supp.2d 975, 989 (N.D. Ill. 2012). Courts must scrutinize fee petitions carefully for duplicative time. *See Jardien v. Winston Network, Inc.*, 888 F.2d 1151, 1160 (7th Cir. 1989). However, two lawyers performing the same task does not necessarily require that the hours must be deducted. *See Tchemkou v. Mukasey*, 517 F.3d 506, 511-512 (7th Cir. 2008). The Court focuses the inquiry on whether the time was "reasonably expended." *Id.*

The lodestar of Defense counsel differentiates between associate counsel Adam Henningsen's hours and those of partner Ian Cooper. *See generally,* (Doc. 67, Exh. 1). While Mr. Henningsen charges $131.75 per hour, Mr. Cooper charges $225 per hour.[1] *Id.* Counsel includes their attempts to schedule Plaintiff's March 11th deposition, the preparation for that deposition, and miscellaneous charges related to the logistics of that deposition (*e.g.*, communicating with the court reporter) in their lodestar and accounting of fees. (Doc. 67, Exh. 1, p. 2-5). Overall, Mr. Henningsen spent 74.7 hours in preparation for the March 11th deposition. *Id.* This included 2.9 hours spent attempting to schedule the deposition, 70.8 hours preparing for the deposition, and 1 hour on administrative tasks regarding the logistics of the deposition. *Id.* The charges for these hours amount to $382.08;[2] $9,327.90; and $131.75, respectively. *Id.* Equally, Mr. Cooper charged 0.2 hours for scheduling the deposition, 0.9 hours for attending and otherwise ensuring the

---

[1] Plaintiff does not challenge the reasonableness of these rates. *See* (Doc. 69). The Court therefore will not address the reasonableness of the rates charged by defense counsel.

[2] Where the multiplication of counsel's hours by counsel's fees returns an amount with a thousandth of a dollar, the Court has rounded up to the nearest whole cent.

facilitation of the deposition, and 0.9 hours preparing for the deposition. *Id.* The charges for Mr. Cooper's hours prior to the March 11th deposition total $45.00; $202.50; and $202.50 respectively. *Id.* Together, the fees charged for the March 11th deposition total $10,291.73. *Id.*

The lodestar next details the fees incurred for rescheduling the March 11th deposition and preparing for the March 17th deposition. *See* (Doc. 67, Exh. 1, p. 5-6). Mr. Henningsen spent approximately one hour attempting to reschedule the deposition as well as negotiating the cancellation fees for the March 11th deposition with the court reporter and Plaintiff's counsel. *Id.* He also spent 5.1 hours preparing a legal strategy and reviewing discovery documents for the March 17th deposition. *Id.* The fees for these hours amount to $131.75 and $671.93 respectively. *Id.* Mr. Cooper logged 0.4 hours rescheduling the March 11th deposition and 0.6 hours preparing for the deposition. *Id.* These fees total $90.00 and $135.00 respectively. Overall, the fees charged for the March 17th deposition amount to $1,028.68.

The next section of the lodestar illustrates the fees Defendant's counsel charged for rescheduling the March 17th deposition and for preparing for and attending the July 17th deposition. (Doc. 67, Exh. 1, p. 6-8). Mr. Henningsen spent 3.7 hours rescheduling the March 17th deposition and negotiating the cancellation fees for that deposition with Plaintiff's counsel and the court reporter. *Id.* He also logged 9.6 hours preparing for and attending the deposition. *Id.* These charges equal $487.48 and $1,264.80 respectively. Mr. Cooper entered 1.5 hours for rescheduling the deposition and 6.2 hours preparing for the

deposition. *Id*. The charges total $337.50 and $1,395 respectively. Together these fees amount to $3,484.78.

The final section of the lodestar for Defense counsel tallies the hours charged for preparing Defendant's motion for sanctions. (Doc. 67, Exh. 1, p. 8-9). Mr. Henningsen charged 10.4 hours for preparing the motion and Defendant's reply to Plaintiff's response. *Id*. These charges amount to $1,370.20. Mr. Cooper also charged 8.6 hours for reviewing Mr. Henningsen's work on the motion, totaling $1,935.00. *Id*. The total fees for the motion for sanctions amount to $3,305.20. Overall, the lodestar for Defense counsel amounts to $18,110.39 in attorneys' fees.[3] *Id*. at p. 9.

Plaintiff contends that the only reasonable charges are those incurred when Defendant's counsel attended or rescheduled the March 17th and July 13th depositions. (Doc. 69, p. 3-4). Under Plaintiff's accounting, the appropriate charge would then be $159.72 for the time Defendant's counsel spent cancelling the March 17th deposition, and $1,171.60 for the fees incurred while counsel was present at the July 13th deposition. *Id*. at p. 3-4. Plaintiff also asserts that the fees alleged for preparing the motion for sanctions are excessive because the motion did not include a new issue of law and because the Court did not grant that motion in its entirety. *Id*. at p. 4. Plaintiff therefore requests the Court

---

[3] Defendant's accounting comes to **$18,110.32**, seven cents less than the Court's accounting of **$18,110.39**. The Court relied on the multiplication of Defendant's counsels' rates by the number of hours listed in the lodestar when calculating each individual amount. However, because Defendant's accounting is the lesser amount, the Court will use Defendant's accounting of **$18,110.32** when considering the total amount to be awarded.

award Defendant a maximum of three hours per attorney for that motion, totaling $1,070.25 in fees. *Id*. at p. 4-5.

The Court finds that the appropriate measure of fees and costs to be awarded is significantly less than those requested by Defendant's counsel, but significantly more than those asserted by Plaintiff. Although the Court referenced Plaintiff's dilatory behavior when scheduling his deposition (Doc. 66, p. 9), it did not intend to sanction Plaintiff for the scheduling of the March 11th and March 17th depositions. Defendant's counsel reached out to Plaintiff's counsel on January 7, 2021 to schedule the first deposition. (Doc. 48, Exh. 3, p. 6). And, while Plaintiff's counsel did not initially respond to the first set of proposed dates, a date for March 11th was set after a follow-up communication from Defendant's counsel. *Id.* at p. 3. The March 11th deposition had to be rescheduled because Plaintiff did not have video conferencing capabilities on his computer, but a follow-up deposition was set just six days later for March 17th. (Doc. 48, Exh. 4, p. 8). Plaintiff, however, did not appear for the deposition because of rain. *Id.* The Court's reference to dilatory conduct when scheduling the deposition was primarily aimed at the length of time it took to schedule the July 13th deposition, a period of approximately four months. It ultimately took three attempts by Defendant's counsel to set that deposition. (Doc. 48, Exh. 4, p. 2-6).

Of course, it was Plaintiff's "evasive, non-responsive and aggressive demeanor" during this July 13th deposition that the Court found to be particularly egregious. (Doc. 66, p. 9). Plaintiff's conduct during this deposition served to make this deposition

worthless and a waste of time for all involved. As such, the Court's intent was to award all fees related to this deposition. This is the reason the Court referenced the cancellation of the March 17th deposition because it intended to use the cancellation of that deposition as a demarcation point. Thus, such fees would include the attorney's fees for the scheduling of the July 13th deposition (necessitated by the cancellation of the March 17th deposition), as well as the preparation time for the July 13th deposition.

Indeed, the hours spent preparing for and scheduling the March 11th and 17th depositions are not causally linked to Plaintiff's sanctionable conduct. Defendant would have incurred the costs and fees for scheduling and preparing for the March 11th and March 17th depositions had they occurred as originally scheduled. Accordingly, these fees fail the "but-for" test required for determining whether the charges are reasonable. *See Goodyear*, 137 S.Ct. at 1187. The Court therefore reduces the fees awarded to Defendant by the amount spent preparing for and scheduling the March 11th and March 17th depositions, which is $10,291.73 and $1,028.68, respectively.

The Court further does not find Defense counsel's charges for the July 13th deposition to be excessive. As Defendant points out, to "be useful and effective, preparation for any deposition . . . must be done close to the time of the deposition." (Doc. 70, p. 4). It is not inherently unreasonable or duplicative for Defendant's counsel to expend time re-preparing to take Plaintiff's deposition even though counsel had previously prepared for the March 11th and March 17th depositions. In fact, such preparation is essential for a thorough and useful deposition. Furthermore, the lodestar

indicates that counsel spent less time preparing for the July 13th deposition, reflecting counsel's increasing familiarity with the documents and strategy prior to the deposition. (Doc. 67, Exh. 1). Counsel spent 9.2 hours preparing for the July 13th deposition. It is true that this is more than the 5.7 hours of time spent preparing for the March 17th deposition. The additional time, however, simply reflects the necessity of re-preparing for the deposition after a period of almost four months had elapsed. The Court therefore finds that these charges are neither duplicative nor unreasonable.

The Court similarly finds that the charges incurred by Defense counsel for preparing Defendant's motion for sanctions are reasonable and not duplicative. Plaintiff asserts that Defendant's counsel can charge no more than three hours per lawyer for their work on the motion for sanctions because the motion did not include novel issues of law and because the motion was granted only in part. (Doc. 69, p. 3-4). Courts in the Seventh Circuit have reduced an award of attorneys' fees based on the prevailing party's partial success at trial. *See Gibson*, 873 F.Supp.2d at 994. However, when doing so, the Court noted that this reduction was designed to better reflect the statutory purpose of the law under which that party brought suit. *Id*. (citing *City of Riverside v. Rivera*, 477 U.S. 561, 575 (1986)). Here, on the other hand, the award of attorneys' fees serves a different purpose, which "is to deter undesirable conduct, not necessarily to fee shift." *Citizens for Appropriate Rural Roads, Inc. v. Lahood*, No. 1:11-cv-01031-SEB-DML, 2014 WL 1342808, at *2 (S.D. Ind. Apr. 4, 2014). Defendant would not have brought the instant motion for

sanctions had it not been for the undesirable conduct of the Plaintiff. Thus, the partial success of the motion has no bearing on the amount of attorneys' fees to award.

The Court also rejects Plaintiff's calculation of the appropriate number of hours to award Defendant for counsels' work on the motion for sanctions. Plaintiff provides no basis of comparison from which the Court may conclude that 19 hours spent on the motion is patently unreasonable. *Cf. O'Sullivan v. City of Chicago*, 484 F.Supp.2d 829, 837 (N.D. Ill. 2007)(declining challenges to an award of fees when the defendant "offered no objective standard, no 'reasonable' number of hours to spend on a given activity, with which to compare" the plaintiff's asserted fee request). When a party fails to provide a "principled basis" on which to reduce allegedly excessive time entries, the Court will not "engage in an arbitrary determination of how long a 'reasonable attorney' would spend" on a motion. *Valerio v. Total Taxi Repair & Body Shop, LLC*, 82 F.Supp.3d 723, 742 n.4 (N.D. Ill. 2015)(citing *O'Sullivan*, 484 F.Supp.2d at 837). As Plaintiff provides no support for his contention that three hours is an appropriate award, or that Defense counsels' reported hours are inappropriate, the Court declines to adopt Plaintiff's proposed accounting. Accordingly, Plaintiff must also pay the full $3,305.20 in charges associated with Defense counsels' preparation of its motion for sanctions. When added to the costs to which Plaintiff previously conceded ($1,454.91), the total amount of fees and costs for which Plaintiff is responsible is **$8,244.82.**

## CONCLUSION

For these reasons, the Court **ACCEPTS in part and REJECTS in part** Defendant's accounting of the costs and fees to be awarded to it as an appropriate sanction. (Doc. 67). The Court awards Defendant **$8,244.82** in costs and fees. The Court further **EXTENDS** the deadline by which Plaintiff must comply with this order for sanctions by forty-five days, up to and including, **April 11, 2022.**

Plaintiff is **WARNED** that the failure to comply with this sanction will result in the dismissal of his case. As per the Court's previous Order (Doc. 66), this case is **STAYED** pending Plaintiff's payment of the fees outlined in this Order. Once the Plaintiff pays the aforementioned monetary sanction as ordered, the **STAY** will be lifted. Once the **STAY** is lifted, Defendant must schedule the Plaintiff's deposition per the Court's instructions in Doc. 66. The same warnings issued to Plaintiff in Doc. 66 remain in effect and a violation of such warnings **COULD RESULT IN THE DISMISSAL OF THIS CASE**.

**IT IS SO ORDERED.**

**DATED: February 25, 2022.**

Digitally signed by Judge Sison 2
Date: 2022.02.25 10:50:10 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**